## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| FACTORY 2-U STORES, INC., | ) | Case No. 04-10111(PJW) |
| a/k/a FACTORY 2-U f/a/k/a | ) | |
| GENERAL TEXTILES, INC., f/a/k/a | ) | |
| GENERAL TEXTILES, f/a/k/a | ) | |
| FAMILY BARGAIN CORPORATION, | ) | |
| f/a/k/a FAMILY BARGAIN CENTER, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DOLLAR TREE STORES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-50206(PJW) |
| | ) | |
| BAYLESS INVESTMENT & TRADING | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Jeffrey M. Schlerf                Garvan F. McDaniel
Seth A. Niederman                 Bifferato Gentilotti LLC
Fox Rothschild, LLP               800 N. King Street - Plaza Level
Citizens Bank Center              Wilmington, DE 19801
919 North Market Street
Suite 1300                        Counsel to Bayless Investment &
P.O. Box 2323                     Trading Company
Wilmington, DE 19899-2323

Jay D. Marinstein
Fox Rothschild, LLP
625 Liberty Avenue
Pittsburgh, PA 15222

Scott R. Kipnis
Nicholas B. Malito
Hofheimer Gartlir & Gross, LLP
530 Fifth Avenue
New York, NY 10036

Counsel for Dollar Tree Stores, Inc.

Dated: August 20, 2010

2

**Walsh, J**  ~~P▪ ⋀⋁⋀~~

This opinion is with respect to the motion to dismiss ("Motion")(Doc. # 9) brought by landlord Bayless Investment & Trading Company ("Landlord") with respect to the complaint for a declaratory judgment ("Complaint")filed by tenant Dollar Tree Stores, Inc. ("Tenant"). The Motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Complaint relates to a contractual dispute between the Landlord and Tenant, which occurred after this Court entered an order  authorizing debtor Factory 2-U Stores, Inc. ("Debtor") to assume and assign its lease with Landlord to Tenant ("Assignment Order"). For the reasons stated below, I find that this Court does not have subject matter jurisdiction over this adversary proceeding. Therefore, I will grant the Motion.

### BACKGROUND

The Complaint alleges that upon Debtor's filing of its notice of intent to assume and assign the lease to Tenant, Landlord and Tenant negotiated a number of changes to the lease. (Adv. Doc. #1, pp. 3-4.) Subsequent to the negotiations, this Court entered the Assignment Order authorizing the Debtor to assume and assign the lease. (Doc. # 1346.) The Complaint further alleged that Tenant entered into a contract for assignment and assumption of the lease ("Assignment Contract"), and that subsequent to the execution of the Assignment Contract, Landlord unilaterally added an

additional term to the Assignment Contract. (Adv. Doc. #1, p.5.)
The additional term calls for the five-year lease extension option
to be automatically exercised unless Tenant gives Landlord notice
of intent not to exercise the option.   The Complaint seeks a
declaratory judgment resolving the contractual rights and duties of
the parties. (Adv. Doc. #1, p.6.)   The Complaint also requests that
the Court grant it attorneys' fees and costs.

Landlord moves to dismiss the Complaint based on lack of
subject matter jurisdiction.   Landlord argues that contrary to the
requirements of 28 U.S.C. § 1334 for subject matter jurisdiction,
Tenant's claims do not arise under Title 11 or in a case under
Title 11, and do not qualify as either "core" or "non-core." (Adv.
Doc. #10.)   Landlord also argues that the proceeding is not related
to bankruptcy as its outcome could not have any effect on the
Debtor's estate. (Adv. Doc. #10, pp. 6-7.)   In the alternative,
Landlord requests the Court to abstain from the matter pursuant to
28 U.S.C. § 1334(c)(1).   (Adv. Doc. # 10, pp. 7-9.)

In response Tenant argues that the Motion should be
denied for the following reasons: (1) the Motion does not explain
whether it is making a facial or factual challenge, as required by
the Third Circuit standard;[1] (2) the proceeding is core as it
requires this Court to give effect to its prior order and could

---

[1]Landlord addressed this standard in its Reply Brief and stated that it is making a facial
attack.  (Adv. Doc. #14, p.3.)  Therefore this ground is insufficient to deny the Motion and is not
further discussed in this opinion.

only arise in the context of bankruptcy, and is a "related to" non-core proceeding because its determination may impact the Debtor's rights and liabilities and administration of the estate; (3) a provision in the Assignment Order in which the court retained "sole and exclusive jurisdiction," and a similar provision in the Assignment Contract, merit the Court's retention of subject matter jurisdiction; (4) the Motion is a collateral attack on the Assignment Order and is barred by res judicata and Bankruptcy Code § 363(m); (5) federal bankruptcy policy favors jurisdiction in a bankruptcy court; and (6) abstention is not warranted as Landlord has not cited any of the factors required for abstention.

**DISCUSSION**

I. The Adversary Proceeding Is Not A Core Proceeding Because It Does Not Arise Under Title 11 Or In A Case Under Title 11

The analysis of the bankruptcy court's subject matter jurisdiction should begin by looking at the source of this jurisdiction. The Third Circuit and other circuit courts have held that the source of subject matter jurisdiction lies in 28 U.S.C. §§ 1334 and 157. See In re Resorts Intern.,Inc., 372 F.3d 154, 161 (3d Cir. 2004)(quoting United States Brass Corp. v. Travelers Ins. Group, Inc., 301 F.3d 296, 303 (5th Cir. 2002))("The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157."); In re Harris, 590 F.3d 730, 736-37 (9th Cir. 2009).  Section 1334

confers "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," while § 157(a) allows district courts to refer proceedings under § 1334 to bankruptcy judges. Thus, the framework for determining subject matter jurisdiction is based on the statutory interpretation of proceedings which are: (1) arising under Title 11, (2) arising in cases under Title 11, or (3) related to cases under Title 11.

The present proceeding does not fall within 28 U.S.C. § 157(b)(2). Tenant cites to the Third Circuit for its assertion that "a proceeding that requires the Bankruptcy Court to interpret and give effect to a previous Bankruptcy Court order is a core proceeding." (Adv. Doc. #12, p. 16.) Although this assertion is correct, in the present instance Tenant asks the Court to do more than interpret or give effect to a previous order - it asks to rule on events that occurred subsequent to the entry of that order. In further support, Tenant analogizes this case to In re DBSI, 409 B.R. 720 (Bankr. D.Del. 2009), but the analogy is misleading. In DBSI the issue was whether the debtors had any right to assign the sublease in question, and the court stated: "The instant proceeding directly relates to these orders and their effect on the estate - specifically whether the orders terminated subleases . . . thereby challenging the disposition of estate assets . . . ." 409 B.R. at 727-28. The present proceeding has no effect on the disposition of

estate assets.  Here, the validity of the order is not questioned, but rather the alteration of lease terms subsequent to the order's entry.  Unlike in <u>DBSI</u>, the outcome of this proceeding would not have an effect on Debtor's estate.

Tenant also argues that the instant proceeding could only arise in the context of a bankruptcy case because the issues arose from the assumption and assignment of a lease under Bankruptcy Code §§ 363 and 365. (Adv. Doc. #12, p.17.) However, the issue is an alteration of terms, which is not unique to bankruptcy cases.  As Landlord points out, where the dispute arises after the assumption and assignment of a lease and is between two non-debtor parties, the bankruptcy court does not retain jurisdiction if the dispute would have no effect on the estate. <u>See</u> <u>In re Lemco Gypsum, Inc.</u>, 910 F.2d 784, 788-89 (11th Cir. 1990)("We agree that courts should retain jurisdiction to enforce their orders, but this does not help [the landlord].  The fact remains that the sale of the debtor's equipment became final on December 3, 1987, and at that time the property left its estate . . . . [W]e fail to see how recovery could conceivably have an effect on debtor's estate . . . There is no reason for the bankruptcy court's jurisdiction to linger.") ; <u>see</u> <u>e.g.</u>, <u>In re Hall's Motor Transit Co.</u>, 889 F.2d 520, 522 (3d Cir. 1989)("[T]he property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction. The bankruptcy court's jurisdiction does not follow the property,

but rather, it lapses when the property leaves the debtor's estate.")

## II.  The Adversary Proceeding Is Not A "Related To" Non-Core Proceeding

Where the proceeding is not considered core, courts look to see if it is "related to" the bankruptcy case to establish subject matter jurisdiction.  The Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), found that the appropriate test for determining whether a civil proceeding is related to bankruptcy is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Id. at 994.  The Supreme Court, after quoting extensively from Pacor and citing similar decisions from other circuits, observed: "But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."  Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995).  The outcome of this proceeding will have no effect on Debtor's estate.

In an attempt to suggest an impact on Debtor's estate, Tenant makes the following statement in its opposition brief:

> A determination of the rights and obligations that were assumed and assigned to Dollar Tree could become law of the case with respect to the other assumptions and assignments to which Dollar Tree and Debtor were parties. Moreover, if Landlord's assertions are correct, Landlord's unilateral action could result in Dollar Tree moving to vacate the

> Assignment Order, which would undoubtedly
> impact Debtor's rights and liabilities and
> administration of the estate.

(Adv. Doc. #12, pp. 19-20.)

The first sentence of the above statement is pure speculation.

Plaintiff has suggested no facts upon which a contractual dispute

between two non-debtor parties would affect other dealings between

Debtor and Plaintiff.  The second sentence is seriously undermined

by the provisions in the documents.   One provision in the

Assignment Order states:

> ORDERED that, pursuant to section 365(k) of
> the Bankruptcy Code, <u>the Debtor shall be
> relieved from any further liability or
> obligation under the Assigned Lease</u>, except
> for any cure obligations under sections
> 365(b)(l)(A) and (B) of the Bankruptcy Code
> as provided for herein.

(Doc. # 1346, p. 3)(emphasis added).

Furthermore, paragraph 5 of the Assignment Contract

states:

> Further, pursuant to section 365(f) of the
> Bankruptcy Code, on and after the effective
> date of the Assignment, <u>Buyer agrees that
> Seller and its estate shall be relieved from
> any liability for any breach of the Lease
> occurring after the effective date of the
> Assignment</u>, and Buyer agrees to indemnify and
> hold Seller harmless from any default in the
> performance of such terms, conditions and
> covenants occurring on or after the effective
> date of the Assignment.

(Adv. Doc. #12, ex. C, ¶ 5)(emphasis added).

As Landlord points out, the Complaint has nothing to do with the Assignment Order and the transaction effected thereby.  The issue is solely with respect to the Landlord's alleged modification of the extension option provision.  The issue here would be exactly the same if the assignment was made outside of bankruptcy, such as an assignment by a lessee to a substitute lessee with consent of the lessor.  Tenant's threat of a possible motion to vacate the Assignment Order is too implausible to suggest an impact on the estate.  See e.g. Pacor, 743 F.2d at 995 ("the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not 'related to' bankruptcy . . . . At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville.").  This is a contract interpretation issue governed solely by Arizona law.

III. The Jurisdiction Provisions In The Assignment Order And The Assignment Contract Do Not Create Subject Matter Jurisdiction In This Court

Tenant argues that this Court retained sole and exclusive subject matter jurisdiction in the Assignment Order.  The Assignment Order provides:

> [T]his Court retains sole and exclusive jurisdiction to resolve any and all matters or disputes arising under or relating to the assumption and assignment of the Assigned Leases, the Assignment Contract with respect to each of the Assigned Leases, this Order and the implementation of this Order.

(Doc. # 1340, p.4)(emphasis added).

Tenant also points to the Assignment Contract, which was signed by Debtor and Tenant containing the following provision:

> <u>Jurisdiction and venue shall be in the Bankruptcy Court</u>, unless and until a different jurisdiction is designated by Seller through a chapter 11 plan that has been confirmed and gone effective.

(Adv. Doc. #1, ex. C, ¶ 17)(emphasis added).

Tenant cites to <u>Travelers Indemn. Co. v. Bailey</u>, 129 S.Ct. 2195 (2009) in support of the argument that the "Bankruptcy Court has jurisdiction to interpret and enforce its own orders even if the claims at issue would not affect the bankruptcy estate." (Adv. Doc. 12, p.6.)  In <u>Travelers</u>, however, the bankruptcy court entered an order merely clarifying the orders it entered a decade earlier, and the Supreme Court did not state more than that: "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." 129 S.Ct. at 2205.  The Supreme Court did not make any reference as to whether the debtor's estate need be affected. Further, the Supreme Court stated that their holding is narrow, and that they do not resolve whether a bankruptcy court may enjoin non-debtor insurers that are not derivative of the debtor's wrongdoing (i.e. a situation that would not have an effect on the bankruptcy estate). <u>Id.</u> at 2207.

     In addition to <u>Travelers</u>, Tenant extensively cites other authority to support its proposition that a bankruptcy court has

jurisdiction to interpret and enforce its own orders.  However, Tenant misstates the issue at hand.  The issue is not whether a bankruptcy court can interpret or enforce its prior orders, but rather, whether it can retain subject matter jurisdiction if that jurisdiction no longer exists.

Despite the Assignment Order's provision that this Court shall retain "sole and exclusive jurisdiction," jurisdiction cannot be created where it is not so proper.  As Landlord points out: "Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket." (Adv. Doc. # 14, p. 6)(quoting <u>In re Resorts Intern., Inc.</u>, 372 F.3d 154, 161 (3d Cir. 2004)).  This means that the Bankruptcy Court will not retain jurisdiction merely because the parties so agreed.  As previously discussed, bankruptcy courts have jurisdiction only over cases arising under Title 11, arising in cases under Title 11, or proceedings related to cases under Title 11.  This proceeding does not meet the <u>Pacor</u> standard as it does not have an effect on Debtor's estate.  Without meeting this standard, the jurisdiction provisions in the Assignment Order and the Assignment Contracts do not give this Court subject matter jurisdiction.

<u>IV. The Motion Is Not A Collateral Attack And Is Not Barred By Res Judicata</u>

Tenant argues that the Motion is a collateral attack on the Assignment Order in violation of Bankruptcy Code § 363(m). Section 363(m) provides:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal . . . .

11 U.S.C. § 363(m).

Tenant argues that § 363(m) prohibits reversal or modification of the Assignment Order. It further argues that "a motion to dismiss based on lack of subject matter jurisdiction, when such jurisdiction is expressly provided for in an order, is not a substitute for timely appeal of that order." (Adv. Doc. #12, p.14.) The problem with Tenant's argument is that Landlord did not commence an adversary proceeding, and nowhere in its Motion does Landlord request that any order of this Court be modified or challenged. I agree with Landlord's response: "The Motion to Dismiss is not an appeal, and [Landlord] does not dispute that the Court had subject matter jurisdiction to enter the Assignment Order. Now, however, the Court lacks subject matter jurisdiction to decide a contract dispute." (Adv. Doc. #14, p. 16.)

With respect to Tenant's allegation that the Motion is barred by *res judicata*, I also disagree. The claim preclusion doctrine "gives dispositive effect to a prior judgment if a

particular issue, although not litigated, could have been raised in the earlier proceeding." <u>Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Centra</u>, 983 F.2d 495, 504 (3d Cir. 1992).  For a successful *res judicata* defense, the following elements are required: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." <u>Id.</u>; <u>In re Mariner Post-Acute Network, Inc.</u>, 267 B.R. 46, 52 (Bankr. D. Del. 2001).  Although *res judicata* is applicable to bankruptcy court orders, its application  is not straightforward:

> [I]n bankruptcy cases the parties in interest may include the debtor, all its creditors and all its shareholders. Additionally, a particular matter in a bankruptcy case may affect the debtor's employees, its vendors, its landlords, parties to contracts with the debtor, and numerous other parties.  These parties are not typically named in the Motion . . . .
>
> Further the issues that may be litigated in the bankruptcy court are far reaching . . . . [A]ll of these issues (though the bankruptcy court may ultimately hear and decide them) are not expected to be litigated at one time. That is, the fact that a particular party may have an interest in a motion does not require that party to raise all interests or claims that it has in the bankruptcy case generally at the time that the motion is heard.  However, this on its face is what res judicata appears to require.  To apply res judicata so broadly would bring bankruptcy cases to a halt.

<u>In re Mariner</u>, 267 B.R. at 53.

In applying the three factor test to the present case, I cannot conclude that the third factor is satisfied in that the Motion does not constitute a "subsequent suit on the same cause of action." Tenant cites to _Mariner_ in support for the proposition that final orders of a bankruptcy court are given _res judicata_ effect, but avoids noting the discussion in _Mariner_ which distinguishes bankruptcy proceedings from civil proceedings, and that the court did not find _res judicata_ to be applicable to the facts of the case. However, even in applying the standard quoted by Tenant, our adversary proceeding does not meet the third element:

> A claim should be barred if the 'factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time . . . .'

(Adv. Doc. # 12, p. 11)(quoting E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 337-38 n.12 (3d Cir. 2000)

The claim litigated in this Court was the assumption and assignment of the lease. The factual underpinnings of the present claim revolve around events that occurred subsequent to the Assignment Order. I agree with Landlord that it is "not seeking to litigate the terms of the Assignment Order or the Assignment Contract in this Court, and consequently, _res judicata_ does not apply to the Motion to Dismiss because the third element of _res judicata_ has not been established." (Adv. Doc. #14, p. 14.)

V. Federal Bankruptcy Policy Does Not Favor Jurisdiction In The

Bankruptcy Court Over Non-Bankruptcy Contractual Disputes

In an attempt to build up its case Tenant makes a public

policy argument.  Without citing to any authority, Tenant asserts:

> If Landlord's position is accepted, that would
> mean that any dispute that arises after the
> entry of a bankruptcy order involving the
> interpretation of that order and the
> transaction documents approved by that order
> would automatically be transferred to state
> court and the Bankruptcy Court by law would be
> prevented from interpreting state law - a
> legally improbable position since bankruptcy
> courts routinely interpret state law and
> modify contracts governed by state law.

(Adv. Doc. #12, p. 20.)

The premises used by Tenant do not lead to its conclusion.  It is

true that bankruptcy courts routinely interpret state law, but only

in bankruptcy cases or matters that have an effect on the

bankruptcy estate.  See In re Wilson, 85 B.R. 722, 727 (Bankr.

E.D.Pa. 1988)("Bankruptcy courts have traditionally and routinely

interpreted state law in order to resolve disputes in bankruptcy

cases and administer the estate.")  However, the law does not

warrant a conclusion that bankruptcy courts should interpret state

law in disputes involving non-debtors where the result has no

impact on the debtor's estate.

**CONCLUSION**

For the reasons stated above, Landlord's motion to dismiss Tenant's complaint for lack of subject matter jurisdiction is granted.